**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Respondent, | No. 1:24-CV-04798 |
| v. | Judge Edmond E. Chang |
| ALBERT ROSSINI, | |
| Defendant-Petitioner. | |

**MEMORANDUM OPINION AND ORDER**

Albert Rossini, a federal inmate proceeding *pro se*, moves to vacate or set aside his sentence under 28 U.S.C. § 2255.[1] R. 1, Pet.'s Mot.[2] A jury found Rossini guilty on 14 counts of wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341, 1343. Cr. R. 1, Indictment; Cr. R. 345, 06/14/18 Order. In 2021, Rossini was sentenced to 132 months' imprisonment. Cr. R. 764, Sentencing J. at 2. His sentence was affirmed by the Seventh Circuit, *United States v. Rossini*, 2023 WL 3862013, at *1 (7th Cir. June 7, 2023) *(Rossini I)*, and this motion followed, R. 1. Now, Rossini challenges his sentence, arguing that he received ineffective assistance of counsel, his request to continue the trial should have been granted, and his original counsel should not have

---

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 2255, 1331.

[2]Citations to the § 2255 civil docket are indicated with an "R." followed by the docket entry number and, if needed, a page or paragraph number. The criminal docket, *United States v. Rossini*, No. 1:15-cr-00515-1 (N.D. Ill. Nov. 18, 2021), is noted as "Cr. R."

been disqualified. Pet.'s Mot. ¶ 12.A–C. Rossini's motion is denied, and no certificate of appealability will issue.

## I. Background

In August 2015, Rossini and his co-defendants were charged with mail and wire fraud arising from a real estate Ponzi scheme. *See generally* Indictment. Specifically, Rossini and his co-defendants persuaded members of the Assyrian community in Chicago to invest in Rossini's real estate company. *Rossini I*, 2023 WL 3862013, at *1. They told investors that their funds would be used to acquire mortgage notes on apartment buildings in foreclosure, that investors would eventually receive title to the properties once the foreclosure proceedings concluded, and that in the meantime investors would receive income from rent paid by apartment tenants. *Id.*; Indictment at 2. But in reality, Rossini's firm did not have an ownership interest in most of the properties, and Rossini made "rent" payments to investors using the investors' own money. *Rossini I*, 2023 WL 3862013, at *1. The Ponzi scheme eventually collapsed when Rossini and his co-defendants ran out of money. *Id.* Some 20 victims lost more than $5 million in the scheme. *Id.*

Attorney Glenn Seiden of Seiden Law Group initially appeared on Rossini's behalf in the criminal case. Cr. R. 9, 08/25/15 Order. About six months later, Seiden (and his co-counsel, Theodore Netzky, along with other attorneys from the firm) moved to withdraw because Rossini could no longer pay them. Cr. R. 125, Withdrawal Mot. ¶ 3; Cr. R. 149, Req. for CJA Appt. ¶ 3. The previously assigned judge advised Rossini that he should file the appropriate paperwork if he wished to request

2

appointment of Seiden under the Criminal Justice Act. Cr. R. 127, 03/03/16 Minute Entry. Rossini did so. Req. for CJA Appt. ¶ 3. In response, the government argued that the motion to withdraw should be granted and entirely new counsel should be appointed because defense counsel had a conflict of interest in the case. Cr. R. 134, Gov.'s Resp. to Withdrawal Mot. at 1–8. The government contended that Seiden and Netzky had a business relationship with Rossini during the period covered by the charges, so they were potential witnesses in the case. *Id.* at 4–19. The district court thus granted the motion to withdraw and appointed new counsel to represent Rossini through the Federal Defender's office. Cr. R. 160, Withdrawal Order.

Rossini's trial began in June 2018. Cr. R. 334, 06/04/18 Order. The morning of jury selection, Rossini notified the district court that he did not believe that his appointed counsel were prepared for trial. Cr. R. 451, 06/04/18 Tr. at 2:13–15, 4:16–19, 5:13–22.[3] Rossini said that trial counsel barely visited him while he was detained, that they had not interviewed witnesses Rossini had suggested, and that they had not reviewed documents Rossini had sent them. *Id.* at 5:14–19, 7:16–21. But trial counsel stated that they had been preparing diligently for months, had spoken regularly with Rossini, and had reviewed all the materials he sent them. *Id.* at 6:7–7:10, 8:22–24. The district court proceeded to trial, relying on trial counsel's statements that they were prepared and noting that Rossini had numerous occasions to raise his concerns at previous hearings but had not done so. *Id.* at 11:10–12:1.

---

[3]Rossini attaches a copy of this transcript to his motion. R. 1, Pet.'s Mot. at 21–34.

The jury found Rossini guilty on all 14 counts of wire and mail fraud. 06/14/18 Order. Rossini then filed several motions for a new trial, some *pro se* and some through new appointed counsel. *See* Cr. R. 372, 08/23/18 Minute Entry; Cr. R. 365, Pro Se Mot. for New Trial; Cr. R. 373, Pro Se Mot. to Suppl.; Cr. R. 442, Counseled Mot. for Hearing; Cr. R. 444, Counseled Mot. to Suppl.; Cr. R. 448, Counseled Mot. for New Trial. In those motions, Rossini raised ineffective-assistance arguments related to his previously appointed trial counsel. *See, e.g.*, Pro Se Mot. for New Trial at 1–3; Counseled Mot. for New Trial ¶¶ 7–8, 10–12, 19. The district court denied these motions. Cr. R. 380, 09/19/18 Minute Entry; Cr. R. 556, 01/28/20 Op. at 1, 8–16.

On direct appeal, appointed counsel raised only challenges to Rossini's sentence. *Rossini I*, 2023 WL 3862013, at *1 (describing Rossini's arguments that "the district court incorrectly calculated the advisory Guidelines range, imposed a substantively unreasonable sentence, and ordered too much in restitution"). The Seventh Circuit affirmed Rossini's sentence. *Id.* Before he was sentenced and while his direct appeal was pending, Rossini also filed two motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), Cr. R. 741, First Comp. Release Mot.; Cr. R. 796, Second Comp. Release Mot., both of which the district court denied, Cr. R. 755, 10/14/21 Order; Cr. R. 861, 05/24/22 Minute Entry. Rossini appealed the denial of his second compassionate-release motion, and the Seventh Circuit affirmed. *United States v. Rossini*, 2023 WL 6059780, at *1 (7th Cir. Sep. 18, 2023). Rossini then brought the current § 2255 motion.

4

## II. Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a federal sentence may move to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. In other words, to obtain relief under § 2255, Rossini must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (cleaned up).[4]

## III. Analysis

### A. Ineffective Assistance of Trial Counsel

Rossini argues that his appointed trial counsel rendered ineffective assistance of counsel. *See* Pet.'s Mot. ¶ 12.A, Att. A. As an initial matter, the government contends that this claim is procedurally defaulted because Rossini did not raise it on direct appeal. R. 10, Gov.'s Resp. Br. at 12–17. Section 2255 "is not a substitute for a direct appeal." *Barnickel*, 113 F.3d at 706. So "[i]f any issue could have been raised on direct appeal, the failure to take such appeal precludes review pursuant to a section 2255 motion unless the petitioner can show cause for the procedural default and

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

actual prejudice resulting from the errors of which the petitioner complains." *Qualls v. United States*, 774 F.2d 850, 851 (7th Cir. 1985) (cleaned up).

But there is an exception to the procedural-default rule for ineffective-assistance claims. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). The trial record often does not contain sufficient evidence to determine whether counsel was ineffective. *Id.* "Applying the usual procedural-default rule to ineffective-assistance claims would … creat[e] the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* at 504. So instead, ineffective-assistance claims may be brought for the first time in a collateral proceeding under § 2255, "whether or not the petitioner could have raised the claim on direct appeal." *Id.* Thus, Rossini's ineffective-assistance claim is not procedurally defaulted.

That conclusion is not altered by the fact that Rossini *did* raise his ineffective-assistance claim in post-trial motions before the district court. *See* Pro Se Mot. for New Trial at 1–3; Counseled Mot. for New Trial ¶¶ 7–8, 10–12, 19. The Seventh Circuit permits defendants who raise ineffective-assistance claims in their criminal cases to withdraw them later, thus preserving the claims for post-conviction review. *See Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) (describing how defendants may withdraw their ineffective-assistance claims on direct appeal when it becomes "clear that those claims would benefit from additional factual development"). Indeed, the Seventh Circuit has allowed defendants to withdraw—and preserve—their ineffective-assistance claims as late as *at oral argument on appeal. See,*

*e.g., United States v. Hardamon*, 188 F.3d 843, 847 (7th Cir. 1999). So Rossini's decision to initially raise the ineffective-assistance claim, and then drop it on direct appeal, does not render the claim procedurally defaulted.

That said, the Court turns to the merits of Rossini's claim. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To win on his ineffective-assistance claim, Rossini must meet the two-element standard set forth in *Strickland*: he must show that counsel's performance was deficient and that he was prejudiced as a result. *Id.* at 687. On the performance element, Rossini "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court must presume "that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (cleaned up). On the prejudice element, Rossini "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Rossini primarily argues that his appointed trial counsel rendered ineffective assistance by failing to interview and call at trial various witnesses that Rossini believes would have offered exculpatory testimony. *See* Pet.'s Mot. ¶ 12.A, Att. A. He lists 13 individuals and describes the testimony that he believes they would have

provided at trial. Pet.'s Mot. Att. A. But Rossini's claim fails because he does not meet either *Strickland* element.

First, Rossini fails to show that trial counsel's representation was objectively deficient. He introduces a handwritten note from his appointed appellate counsel that states, "Both [trial attorneys] have admitted to me that they contacted no witnesses." R. 4, Pet.'s Br. Exh., 04/18/19 Note. True, "[t]he failure to interview witnesses can constitute deficient performance in particular cases." *Rutledge v. United States*, 230 F.3d 1041, 1050 (7th Cir. 2000). But the determination of how much pretrial investigation into witnesses is required, "like so many other decisions that an attorney must make, is a matter of professional judgment." *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991). Trial defense counsel need not "track down every lead or … personally investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). Thus, counsel need not contact a potential witness if they "can make a rational decision that investigation is unnecessary." *Montgomery v. Petersen*, 846 F.2d 407, 413 (7th Cir. 1988) (cleaned up).

Besides the note, Rossini introduces no other evidence about counsel's decision not to interview or call at trial the 13 potential witnesses. So it "remains unclear whether [counsel] might have had a reason for not" contacting or calling those witnesses. *United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 175 (7th Cir. 1990). "[T]he burden of this ambiguity falls not on the [government] but on [Rossini]." *Id.* Because Rossini presents no evidence about trial counsel's strategy—in other words,

he does not support his claim that there *was* no strategy—Rossini fails to prove the performance element of *Strickland*. *See Ashimi*, 932 F.2d at 649 ("[A] blank record cuts in favor of, not against, effective assistance."); *see also Montgomery*, 846 F.2d at 412 (concluding that counsel acted unreasonably because counsel admitted on the record that his failure to investigate "was *not* … a strategic decision" but "due to 'inadvertence' as well as the fact that he 'simply didn't believe' the petitioner" (emphasis in original)).

What's more, the trial record provides a rational reason why counsel did not contact or call the potential witnesses: interview notes from the Federal Bureau of Investigation suggested that some of those individuals would not offer testimony helpful to Rossini's defense. 01/28/20 Op. at 11; Cr. R. 462-5, Gov.'s Exh. E, Shaffer Interview; Cr. R. 462-6, Gov.'s Exh. F, Rosen Interview. Rossini contends that it was unreasonable for trial counsel to rely on those interview notes because they are (according to him) often inaccurate. R. 24, Pet.'s Reply Br. at 8–13. But he offers no reason why *these* interview notes were specifically inaccurate. Yes, he submits an affidavit from one witness who disputes a statement in the notes from his interview (that he had never seen Rossini close a transaction in four years). R. 4, Pet.'s Br. Exh., Rotstein Affidavit ¶ 4. But one minor inaccuracy (assuming that the witness's version is the right one) is not sufficient to put trial counsel on notice that the interview notes were wholly inaccurate, let alone create a duty to contact and interview every potential witness. Perhaps there are circumstances where interview notes could raise significant questions about the usefulness of the interviewee's potential testimony,

9

requiring defense counsel to further investigate the witness. But Rossini does not show that that is the case here.

Second, even assuming that trial counsel's performance was objectively deficient, Rossini fails to demonstrate he was prejudiced by the failure to investigate or call the potential witnesses. "[W]here counsel has failed to investigate, [the Court] must exercise extreme caution in the evaluation of the prejudice component" because "[i]t is all too easy … to hypothesize about 'what might have been' if a different trial tactic had been adopted." *Sullivan*, 819 F.2d at 1392. Thus, "the petitioner must make[] a comprehensive showing as to what the investigation would have produced." *Id.* (cleaned up). Usually, this means that "the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). If the petitioner is unable to produce such an affidavit, he must "explain [this] absence and … demonstrate, with some precision, the content of the testimony [the witness] would have given at trial." *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987).

Rossini fails to produce evidence of the supposed testimony. As just mentioned, he presents a single affidavit from only one of the 13 potential witnesses, Meir Rotstein. *See* Rotstein Affidavit. In the affidavit, Rotstein says that he worked for Rossini's real estate firm for several years, and he describes several legitimate transactions that the firm completed. *Id.* ¶¶ 1, 5–8. Rotstein also says that he never told the Federal Bureau, or anyone else, that "he never saw [Rossini] close any transactions

10

in the four years he worked with him." *Id.* ¶ 4. But as the district court explained in its opinion denying Rossini's motion for a new trial, at most, this affidavit shows only that Rossini's firm completed *some* legitimate transactions. 01/28/20 Op. at 13. The fact that Rossini conducted *some* legitimate business is not inconsistent with the government's theory that Rossini also conducted a fraudulent Ponzi scheme. *Id.* So even if Rotstein had testified to the contents of his affidavit, Rossini has not demonstrated that it would have changed the outcome of the trial.

For the other 12 potential witnesses, Rossini produces no evidence to show what their trial testimony would have entailed. That failure alone is dispositive. *See Wright*, 125 F.3d at 1044. But even if the Court considers Rossini's purported descriptions of these potential witnesses' testimony, he still does not show prejudice. Rossini says that several of the potential witnesses (Lisa Rosen, Anthony Klytta, Denise Azizian, and Lior Coresh) would have testified generally about his business and some of his firm's transactions. *See* Pet.'s Mot. Att. A ¶¶ a–b, d, h. But just like the contents of Rotstein's affidavit, testimony that Rossini had some legitimate business would not disprove that he also participated in a Ponzi scheme. For several other potential witnesses (Rotstein and Brian Tracey), Rossini offers mere conclusory assertions that they "would refute the government allegations in [their] testimony if called to testify." *Id.* ¶¶ c, e. These assertions are inadequate to meet Rossini's burden to describe the individuals' potential testimony "with some precision." *DeRobertis*, 811 F.2d at 1016.

Finally, Rossini does say, with some specificity, that the remaining witnesses (Richard Kruse, Craig Shaffer, Barbara Boiko, Ronald Osimani, Tamera Brown,

Theodore Netzky, and Glenn Seiden) would have testified that he did not participate in and was unaware of the fraudulent scheme. Pet.'s Mot. Att. A ¶¶ f–g, i–k. Specifically, Rossini says that these witnesses would have testified that he lacked fraudulent intent when he engaged in various transactions related to the Ponzi scheme. *See id.* ¶¶ f–g, i, k. And they would have testified that one of Rossini's co-defendants, Thomas Murphy, was actually responsible for the fraud. *See id.* ¶¶ g, j, k. But Rossini offers no concrete facts to establish that those witnesses had knowledge of his intent. In other words, Rossini offers no explanation of how the witnesses have personal knowledge of the details of the charged transactions and thus could attest that Rossini took those actions without fraudulent intent (rather than, as the government argued at trial, to cover up the Ponzi scheme). So trial counsel's failure to contact and call these potential witnesses did not prejudice Rossini. And because Rossini fails to meet either element of *Strickland*, his ineffective-assistance claim fails. He is not entitled to relief on this ground.[5]

---

[5]In his opening brief, Rossini alleges other ways in which trial counsel's representation was allegedly deficient. *See* R. 4, Pet.'s Br. at 5–7 (noting that trial counsel failed to hire a forensic accountant and to introduce various documents into evidence at trial); *id.* at 13–15 (alleging that trial counsel failed to attend status hearings, filed motions with misspellings and inaccuracies, and contacted Rossini's wife to testify at trial despite her lack of relevant knowledge). But Rossini does not provide adequate detail about the evidence that he alleges trial counsel failed to introduce, let alone actual copies of the documents or filings. Thus, he has not shown that it was objectively unreasonable for trial counsel to omit this evidence, nor that he was prejudiced as a result. And Rossini has not shown that the other alleged issues rise to the level of constitutionally deficient representation, nor that they altered the outcome of his trial. So he also fails to prove an ineffective-assistance claim based on these allegations. *See United States v. Hise*, 65 F.4th 905, 909–10 (7th Cir. 2023) (rejecting ineffective-assistance claim because petitioner failed to identify deficient performance, prejudice, or "failure of representation so profound that prejudice is inherent in the situation" (cleaned up)).

Rossini requests that, if the Court does not grant his motion outright, then the Court should hold an evidentiary hearing to further develop the factual record for his ineffective-assistance claim. Pet.'s Br. at 9–10. "A district court … must grant an evidentiary hearing if the petitioner alleges facts that, if proven, would entitle him to relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (cleaned up). But "a hearing is not required if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Id.* (quoting 28 U.S.C. § 2255(b)). For example, no hearing is required "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Id.* at 597 (cleaned up). That is the case here. Rossini presents an affidavit from only one witness. *See* Rotstein Affidavit. And for all of the potential witnesses, Rossini does not allege specific, concrete facts that, if true, would entitle him to relief. Thus, no evidentiary hearing is required. *See Bruce*, 256 F.3d at 598–99 (holding that an evidentiary hearing was necessary because multiple potential witnesses stated in sworn affidavits that they would have provided specific alibi testimony at trial).

### B. Denial of Trial Continuance

Rossini next argues that he should have been granted a continuance of trial when he informed the district court that his appointed counsel were unprepared. Pet.'s Mot. ¶ 12.B, Att. B.[6] Rossini makes two arguments related to this issue: First,

---

[6]The government argues that Rossini waived this issue "by failing to develop it via any citations to authority or to the record." Gov.'s Resp. Br. at 21–22. But because Rossini is *pro se*, the Court construes his filings leniently. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Rossini clearly raised this claim in his motion and brief, so it is not waived.

that the district court violated his Sixth Amendment right to counsel when it denied his request to continue trial. *See id.*; Pet.'s Br. at 16–21. And second, Rossini's appointed appellate counsel offered ineffective representation because he failed to raise the continuance issue on direct appeal. *See* Pet.'s Mot. Att. B.

The first argument is potentially subject to procedural default because Rossini did not raise it on direct appeal. *See Rossini I*, 2023 WL 3862013, at \*1; *see Massaro*, 538 U.S. at 504 (describing how the general rule for non-ineffective-assistance claims is that they must be raised on direct appeal to avoid procedural default). But Rossini can overcome procedural default by showing "(1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). "Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default." *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (cleaned up). Thus, whether Rossini's first argument (about the denial of the continuance) was defaulted turns on his second argument (about the ineffectiveness of his appellate counsel). *See id.* The second argument is not procedurally defaulted (indeed, because it is based on appellate counsel's alleged deficiencies, there is no way that Rossini could have raised this claim on direct appeal). *See Massaro*, 538 U.S. at 504–05. So the Court turns to the substance of the ineffective-assistance claim.

To meet the performance element of *Strickland*, Rossini must establish that "appellate counsel failed to raise an issue that was both obvious and clearly stronger

14

than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). "[C]ounsel is not required to raise every nonfrivolous issue on appeal." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). And to meet the prejudice element, Rossini "must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Id.*

"[N]ot every restriction on counsel's time or opportunity … to prepare for trial violates a defendant's Sixth Amendment right to counsel." *United States v. Cosby*, 924 F.3d 329, 334 (7th Cir. 2019) (cleaned up). "A court has broad discretion in scheduling trials, and while a court cannot have a myopic insistence upon expeditiousness in the face of a justifiable request for delay, a court may adhere to a set trial date unless there are compelling reasons to grant a continuance." *Id.* (cleaned up). District courts may consider various factors when ruling on a continuance request, "including (1) the amount of time available for preparation … ; (2) the likelihood of prejudice from denial; (3) the complexity of the case; (4) the status of discovery; and (5) the public interest, including inconvenience to the district court and fairness to the victims." *Id.* at 334–35.

On the morning of trial, Rossini presented no compelling reasons for a continuance. He said that trial counsel had barely visited him and had not reviewed the evidence he sent them. 06/04/18 Tr. at 5:14–19, 7:16–21. But trial counsel stated that they had spent months preparing, including speaking regularly with Rossini and reviewing the materials he sent them. *Id.* at 6:7–7:10, 8:22–24. The district court reasonably accepted trial counsel's representations, *see Morris v. Slappy*, 461 U.S. 1, 12

15

(1983), and those representations established that they had adequate time to prepare and that no more discovery was needed. Rossini makes a general, conclusory assertion that trial counsel were inadequately prepared and thus "presented no defense and failed to adequately impeach the government's witnesses." Pet.'s Mot. Att. B. But "vague allegations that additional time would have resulted in a more vigorous defense are insufficient to establish" that a continuance was necessary. *United States v. Shields*, 789 F.3d 733, 749 (7th Cir. 2015).

The district court also noted that Rossini had numerous occasions to raise his concerns at previous hearings, but did not do so. 06/04/18 Tr. at 11:10–12:1. Rossini did not offer a clear explanation for why he failed to raise his concerns earlier. *See United States v. Chiappetta*, 289 F.3d 995, 999 (7th Cir. 2002). To continue the trial the day it was to begin would have been burdensome on the court's trial calendar, on the potential jurors already summoned, and on the victims of the Ponzi scheme. *See Cosby*, 924 F.3d at 335. Thus, considering all the relevant factors, the district court reasonably denied Rossini's request to delay the trial.

Appellate counsel did not perform objectively deficiently by failing to raise the continuance issue because it was not clearly stronger than the sentencing issues he raised. And Rossini shows no prejudice because there is not a reasonable probability that this issue, if raised, would have altered the outcome of the appeal. Thus, Rossini fails to prove his ineffective-assistance claim. Without a winning ineffective-assistance claim, Rossini cannot show cause for failing to raise the continuance issue on direct appeal. So that argument is procedurally defaulted.

16

### C. Disqualification of Original Counsel

Rossini also argues that the district court violated his Sixth Amendment right to counsel by disqualifying his original counsel from Seiden Law Group. Pet.'s Mot. ¶ 12.C. Rossini did not raise this claim on direct appeal. *See Rossini I*, 2023 WL 3862013, at *1. And unlike the continuance issue, Rossini does not raise any cause for this failure, so the claim is procedurally defaulted.

Even if the claim were not procedurally defaulted, it has no merit. "An element of the right to counsel under the Sixth Amendment is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008) (cleaned up). But at the relevant stage in the case, Rossini was no longer able to pay Seiden and Netzky, and was requesting that they be appointed to represent him under the Criminal Justice Act. Withdrawal Mot. ¶ 3; Req. for CJA Appt. ¶ 3. "The right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Bender*, 539 F.3d at 454 (cleaned up). So Rossini had no constitutional right to select Seiden and Netzky over any other appointed trial counsel.

What's more, Seiden and Netzky had a clear conflict of interest: they had a business relationship with Rossini during his participation in the Ponzi scheme and could be called to testify in the case. Gov.'s Resp. to Withdrawal Mot. at 1–19. Indeed, Seiden and Netzky are two of the potential witnesses that Rossini himself identifies in his § 2255 motion. Pet.'s Mot. Att. A ¶ k. The district court had ample ground to disqualify Seiden and Netzky from representing Rossini. *See Bender*, 539 F.3d at 454.

17

Rossini argues that he waived the conflict, Pet.'s Mot. Att. A ¶ k, but "a defendant may not … demand that a court honor his waiver of conflict-free representation." *Bender*, 539 U.S. at 454. The disqualification of the Seiden Law Group thus did not violate Rossini's right to counsel.

### D. Other Arguments

In his § 2255 motion, Rossini raises three issues: his trial counsel's failure to contact and call witnesses, the denial of his continuance request, and the disqualification of his original counsel. Pet.'s Mot. ¶ 12.A–C. In his reply brief, he raises—for the first time—a new prosecutorial-misconduct claim. Pet.'s Reply Br. at 14–26. Rossini failed to raise this issue on direct appeal, *Rossini I*, 2023 WL 3862013, at *1, so it is procedurally defaulted, *Delatorre*, 847 F.3d at 843. And Rossini waived this claim by failing to raise it in his § 2255 motion or opening brief. *See Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023). Because the prosecutorial-misconduct claim is doubly defaulted, it cannot support Rossini's motion.

Rossini also filed a supplemental motion in which he argues that the government's witnesses improperly testified at trial that payments Rossini made to his investors were "lulling payments"—"that is, payments designed to lull the investors into thinking they were receiving money to which they were entitled, though they were not." R. 30, Pet.'s Suppl. Mot. at 1–2. To the extent that this is not an ineffective-assistance claim, it is procedurally defaulted because Rossini did not raise it on direct appeal. *Delatorre*, 847 F.3d at 843. Perhaps Rossini is arguing that trial counsel was ineffective because they failed to prevent the government from introducing this

testimony or characterizing the payments as "lulling." But that would not constitute ineffective assistance of counsel. Of course, it was the jury's responsibility to make the ultimate determination about whether Rossini defrauded the investors, but the witnesses' testimony about his payments was relevant evidence that the jury could consider. Trial counsel would not have been able to stop this testimony from coming in. Thus, it was not objectively unreasonable for them not to try, and Rossini experienced no prejudice because the testimony would have been admitted even if trial counsel had tried to contest it.

## IV. Conclusion

For the reasons discussed, Rossini's § 2255 motion is denied. No certificate of appealability shall issue. In order to obtain a certificate, Rossini must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That standard is met only if "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up). Rossini's arguments about ineffective assistance of counsel, the continuance denial, and the disqualification of his counsel are clearly

19

meritless, so Rossini has not made the requisite showing. No certificate of appeala-

bility shall issue from this Court.

ENTERED:


s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: April 17, 2026